UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARK MCCOMBS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:11-CV-160-JD-RBC |
| | ) |
| FEDERAL EXPRESS CORPORATION | ) |
| d//b/a FEDEX EXPRESS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

In this suit, Plaintiff Mark McCombs ("McCombs") alleges discrimination by his former employer, Defendant Federal Express Corporation ("FedEx"), on the basis of age and perceived disability. McCombs claims that FedEx denied him the opportunity to participate in job-related training due to his age in violation of the Age Discrimination in Employment Act ("ADEA"). Further, he alleges that this denial of training directly led to him failing a required test and losing his Courier position. Next, McCombs argues that he was terminated and denied reinstatement to his former Handler position because of a perceived mental disability in violation of the Americans with Disabilities Act ("ADA"). FedEx maintains that McCombs was not denied job-related training on the basis of age, but rather because he had already received the training when studying for an earlier test. Further, FedEx claims that it never regarded McCombs as disabled and that the position that McCombs demanded was no longer available. As a result, FedEx claims that McCombs was deemed to have voluntarily resigned as per FedEx's facially neutral Mandatory Training Policy.

Now before the Court is Defendant Federal Express Corporation's Motion for Summary Judgment [DE 22] against McCombs, as well as McCombs's Rule 56 Motion to Strike [DE 29]. The

1

Motion for Summary Judgment was filed on August 28, 2012, and is hereby GRANTED. Further, the Motion to Strike, filed on October 10, 2012, is also hereby GRANTED.

**Standard of Review**

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must construe all facts in the light most favorable to the nonmoving party, making every reasonable inference and resolving every doubt it its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "before a non-movant can benefit from a favorable view of the evidence, it must show some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of [a] genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party then bears the burden of demonstrating that such a genuine issue of material fact exists. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.ed 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**Material Facts Not in Dispute**

Under FedEx's Mandatory Training Policy, if an internal new hire is not able to complete the mandatory training requirements for his or her new position, the employee is returned to his or her former position, if possible. [DE 24-5 at 18-20]. However, if the position has been filled or is no longer available, the employee is placed on a 90-day personal leave of absence without pay; during this time, the employee may submit job applications for any open positions at FedEx for which he or she is eligible. *Id*. If the employee fails to secure a position within this 90-day period, he or she is considered to have "voluntarily resigned" from FedEx. *Id*. During his employment at FedEx, McCombs received several copies of the Mandatory Training Policy as a part of FedEx's Employee Handbook. [DE 24-1 at 37-39].

McCombs began working for FedEx in 1992 as an "on-call" Courier at FedEx's station in Fort Wayne, Indiana. *Id.* at 24, 36-37. A year later, FedEx promoted McCombs to a part-time Courier position. *Id.* at 40-41. However, after failing a required job knowledge test twice in 1996, McCombs decided to step down to a part-time Handler position at the Fort Wayne station in January of 1997 rather than face termination of his employment. *Id*. at 47-52. He attempted to become a Courier in 2000 and a Ramp Transport Driver in 2006; however, each time he failed to pass the required Courter training class and test, necessary for both positions. Each time, McCombs was able to return to his former Handler position at the Fort Wayne Station under the Mandatory Training Policy because it had not already been filled and remained available. *Id.* at 63, 93-95.

In response to the economic decline, FedEx began to reorganize and streamline operations at the Fort Wayne Station towards the end of 2008 in order to reduce costs. *Id*. at 197-98; DE 24-11 at 2. McCombs was one of several employees affected by these cost-cutting measures; specifically, FedEx reduced McCombs's work hours and began to reassign some tasks to other employees. [DE

24-1 at 197-98; DE 24-11 at 2]. McCombs decided to accept a full-time Courier position at the Fort Wayne Station in May of 2009, aware that he would need to pass the courier training exam in order to keep this position. [DE 24-1 at 121, 126-27; DE 24-5 at 17, 23; DE 24-8 at 2]. Within a month, Kyle Abate, another Handler at the Fort Wayne Station, and John Kreuger, a Checker/Sorter from the Indianapolis Station, were also offered Full-time Courier positions at the Fort Wayne Station. [DE 24-8 at 2-3; DE 24-13 at 2-3]. After McCombs and Abate were promoted to Courier, FedEx hired new employees to fill their vacant Handler positions at the Fort Wayne Station. [DE 24-1 at 157-58; DE 24-8 at 4].

Throughout his years at FedEx, McCombs receiving training and instruction required for the various positions in which he was employed. [DE 24-1 at 41-43, 63, 93, 126; DE 24-13 at 2-4, 9-12]. Since McCombs had already received much of the classroom and computer instruction to be a Courier in his previous attempts, the only pre-requisite training that McCombs needed to complete before taking the Courier training again was on-road observations and hands-on practice with the Power Pad scanning device that FedEx couriers use. [DE 24-13 at 3-4]. Before McCombs took the Courier training class in July 2009, his manager and other experienced FedEx couriers took him on delivery and pickup routes and gave him experience using the PowerPad. [DE 24-1 at 133-34; DE 24-8 at 3-4].

On July 27, 2009, McCombs was notified by his training instructor that he had failed the required Courier training class. [DE 24-1 at 152-54; DE 24-13 at 4-5]. Upon hearing this, McCombs made a reference to committing suicide. [DE 24-1 at 154; DE 24-13 at 5]. In addition, FedEx received a report from an employee that McCombs had threatened to shoot FedEx employees, his wife, and himself if he failed the Courier training class again, although McCombs denies ever making such statements. [ DE 24-1 at 161-62, 164; DE 24-8 at 4; DE 24-11 at 3]. In response, FedEx

4

alerted Fort Wayne Police about a possible threat of workplace violence and placed McCombs on a paid suspension pending an investigation of the allegation. [DE 24-8 at 4, 11; DE 24-9 at 6; DE 24-11 at 3-4]. During this investigation, FedEx decided not to discipline McCombs because it was unable to corroborate the allegation; however, they did request that McCombs undergo a fitness-for-duty evaluation by a psychologist to ensure that he was not a danger to himself or others. [DE 24-7 at 2-3; DE 24-8 at 4-5; DE 24-11 at 4, 9].

On August 31, 2009, a psychologist conducted a fitness-for-duty evaluation of McCombs, concluding that there was no clinically significant evidence that McCombs was an imminent harm to himself or others; however, the psychologist recommended that McCombs receive ongoing mental health counseling to prevent his mild anxiety, depression, and anger from becoming more clinically significant. [DE 24-1 at 175-77; DE 24-7 at 3-4; DE 24-15 at 2-7]. After McCombs complied with the psychologist's recommendation for further counseling, FedEx notified McCombs on October 2, 2009 that he was being placed on a 90-day unpaid leave of absence because he had failed the Courier training and his former Handler position had already been filled, in accordance with the Mandatory Training Policy. [DE 24-1 at 177-78; DE 24-5 at 37; DE 24-11 at 5-6]. McCombs was also notified that if he did not apply for and obtain a new position at FedEx by the end of his 90-day unpaid leave of absence, FexEx would consider him to have voluntarily resigned his employment with FedEx. [DE 24-1 at 177-78; DE 24-5 at 37; DE 24-11 at 5-6].

During his 90-day leave of absence, FedEx managers at the Fort Wayne Station sent FedEx's nationwide weekly job postings to McCombs at his home address. [DE 24-1 at 179-82, 184-87; DE 24-5 at 38-40, 42-46; DE 24-6 at 1-17; DE 24-8 at 5-7]. These job postings listed numerous available positions that McCombs was qualified to take in the region, including two open part-time Handler positions at the Fort Wayne Station that became available in November 2009 [DE 24-1 at

5

180-82, 184-87, 201-05, 237; DE 24-5 at 38-40, 42-46; DE 24-6 at 1-17; 24-8 at 6]. However, McCombs told FedEx that he would only accept either a full-time Handler position or a position in which he could be guaranteed to work as many hours as he did in the Spring of 2009 [DE 24-1 at 188-91, 201, 206-07, 238; DE 24-8 at 6]. FedEx managers informed McCombs that there was no available full-time Handler position at the Fort Wayne Station and they could not guarantee a certain number of hours each week due to the reorganization that had taken place in order to reduce costs. [DE 24-1 at 189-90, 197-99; DE 24-8 at 6].

McCombs never applied for a position at FedEx during his 90-day unpaid leave of absence. [DE 24-1 at 206; DE 24-8 at 6]. As such, FedEx notified McCombs that it considered him to have voluntarily resigned his employment on January 20, 2010 under its Mandatory Training Policy. [DE 205-06; DE 24-6 at 18]. On April 28, 2010, McCombs filed a Charge of Discrimination against FedEx with the Equal Employment Opportunity Commission ("EEOC"), alleging age and disability discrimination. [DE 24-1 at 249-50; DE 24-6 at 51-54].

**Discussion**

I.     Age Discrimination

A district court cannot hear claims under the ADEA until after the plaintiff has filed a timely charge of discrimination with the EEOC. 29 U.S.C. § 629(d); *Levin v. Madigan*, 692 F.3d 607, 615 (7th Cir. 2012). In Indiana, plaintiffs pursuing a cause of action under the ADEA must file a charge with the EEOC within 180 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(1)(A); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 541-42 (7th Cir. 1988). In order to determine the timeliness of an EEOC complaint, it is important to "identify precisely the 'unlawful employment practice' of which [the plaintiff] complains." *Del. State College v. Ricks*, 449 U.S. 250, 257 (1980). The "proper focus is upon the time of the *discriminatory acts*, not upon the time at

6

which the *consequences* of the acts became most painful." *Id.* at 258 (emphasis in original); *See also Hamilton v. Komatsu Dresser Indus. Inc.*, 964 F.2d 600, 603 (7th Cir. 1992). The "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257. Under the ADEA, a wrongful denial of job-related training may constitute an unlawful employment practice if it materially affects the plaintiff's employment. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 574-75 (7th Cir. 2001).

McCombs alleges that FedEx "declined to provide necessary pre-requisite training to McCombs, setting him up to fail the pre-Courier training class due to his age, while giving the advantage of relevant training to similarly situated younger employees." [DE 31 at 13]. Further, McCombs argues that FedEx's refusal to provide pre-requisite training to McCombs materially affected his employment: "but for the Defendant's denial of full, timely training to McCombs in July 2009, he could have passed his Courier test, and would have remained in that position[.]"*Id*. Thus, McCombs contends that, for the purposes of his ADEA claim, he was discriminated against when he was denied training opportunities that were afforded to similarly situated younger workers. On his Charge of Discrimination form filed with the EEOC, McCombs listed July 10, 2009, as the date when this discrimination first took place [DE 30-12 at 1]. Therefore, McCombs had 180 days from FedEx's refusal to provide training to him, starting on or about July 10, 2009, to file a charge with the EEOC, setting the deadline on or about January 6, 2010.[1]

McCombs filed his Charge of Discrimination form with the EEOC on April 26, 2010 [DE 24-6 at 51], well beyond the January 6, 2010 deadline. However, McCombs argues that January 13, 2010 – the date of his termination under FedEx's Mandatory Training Policy – should be the

---

[1] Even if he were to argue that the limitations period could not begin until he was aware of his testing failure (and he does not), McCombs was notified of his failure to pass the test on July 29, 2009, which also falls outside the limitations period.

7

relevant date of discrimination in the context of the EEOC filing deadline. [DE 31 at 13]. But McCombs has not challenged the application of the Mandatory Training Policy as discriminatory under the ADEA; rather, McCombs is alleging that the discriminatory act was the denial of training that ultimately led to his loss of the Courier position. *Id.* McCombs makes no other arguments relative to the applicable limitations period. The correct inquiry is not to identify when the consequences of the discrimination became complete, but instead when the discrimination itself took place. *Hamilton*, 964 F.2d at 603.

In *Hamilton*, a group of workers in Illinois were denied training by their employer that would have made them eligible for "multiple-skill" positions under their collective bargaining agreement and thus less vulnerable to layoffs, since the number of "single-skill" positions was being reduced. *Id.* at 602. Each of the employees filed charges of age discrimination with the EEOC within 300 days of being laid off; however, the denial of training fell far outside of the 300-day filing deadline in Illinois. *Id.* at 602-603. The Plaintiffs argued that under the ADEA, the unlawful practice occurred when they lost their jobs and not when they were allegedly denied job-related training on the basis of age. *Id*. However, the Seventh Circuit Court of Appeals held that the layoffs "were only consequences of the refusal to train", not discriminatory acts themselves, since the layoffs were in compliance with a facially neutral training policy. *Id.* at 604. Therefore, their claims were untimely because the filing period began to run from the time the employer refused to provide training. *Id*.

As in *Hamilton*, McCombs alleges that a decision to deny him job-related training on the basis of age led to his eventual termination. [DE 31 at 13]. Similarly, his eventual termination was pursuant to a facially neutral policy, FedEx's Mandatory Training Policy. Thus, like in *Hamilton*, Indiana's 180-day filing period began to run from the time FedEx refused to provide McCombs training, not when the "consequences of the refusal to train" became complete in McCombs's

8

termination. *Hamilton*, 964 F.2d at 604; *See also Ricks*, 449 U.S. at 258 (the "proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful.").

Therefore, since McCombs's charge of age discrimination was not filed with the EEOC within 180 days of the alleged unlawful practice, the decision to deny job-related training on the basis of age, McCombs's ADEA claim is untimely under 29 U.S.C. § 626(d)(1)(A). *Steffen*, 859 F.2d at 541-42. As such, there is no genuine issue of material fact and FedEx is entitled to judgment as a matter of law on McCombs's ADEA claim.

## II. Disability Discrimination

In order to preclude summary judgment on an ADA claim, a plaintiff must establish as a threshold matter that he or she "was a qualified individual under the ADA." *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1090 n.3 (7th Cir. 2000). The ADA "prohibits discrimination by a covered entity only 'against a qualified individual with a disability.'" *Id.* It is "well-established" that a plaintiff has the burden of proving that he or she is "qualified" to perform the essential functions of the job he or she holds or seeks, "with or without reasonable accommodation." *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 973 (7th Cir. 2000). In order to determine whether the plaintiff was a "qualified individual with a disability" under the ADA, this Court first considers whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id*. If the first step is met, this Court then evaluates "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* However, the plaintiff may not simply prove that he or she is a qualified individual for an abstract position; rather, the plaintiff "must identify a vacant . . . position and prove he is qualified for it." *Winfrey v. City of Chicago*, 259 F.3d

9

610, 618 (7th Cir. 2001). The ADA "does not require employers to create new positions[.]" *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002).

McCombs alleges that he was discriminated against because FedEx regarded him as having a mental disability that rendered him incapable of performing his duties. [DE 31 at 9]. Specifically, McCombs claims that FedEx discriminated against him due to this perceived disability by terminating him and refusing to reinstate him to his former Handler position. *Id.* at 9-11. But McCombs' former Handler position was filled shortly after he was promoted to Courier, a fact which he does not dispute. [DE 24-1 at 157; DE 24-8 at 4; DE 24-10 at 3; DE 24-11 at 3]. Thus, his old job was not vacant. McCombs *was* qualified for several other positions, including two part-time Handler positions at the Fort Wayne Station; however, he does not dispute that he declined to apply for these positions. Instead, he sought a full-time Handler position at the Fort Wayne Station, or a Handler position with a guaranteed schedule of hours equivalent to what he had in the Spring of 2009. However, no such position existed at the time because FedEx had streamlined its operations to reduce costs, another fact which McCombs does not dispute. [DE 24-8 at 6]. Finally, as already noted, by failing the required Courier training course, McCombs did not satisfy the prerequisites for the position, *Bay*, 212 F.3d at 973, and thus with respect to that position could not be a "qualified individual under the ADA." *Robin*, 200 F.3d at 1090 n.3. Thus, rather than "identify[ing] a vacant . . . position and prov[ing] he is qualified for it", McCombs has identified only hypothetical positions that are not available, or positions for which he was not qualified. *Winfrey*, 259 F.3d at 618. FedEx does not need to create a new position for McCombs in order to comply with the ADA. *Watson*, 304 F.3d at 752. Therefore, McCombs has not met his burden under the ADA of establishing that a vacant position existed for which he was qualified for and denied, and his claim can proceed no further. *Bay*, 212 F.3d at 973.

III. <u>Motion to Strike</u>

McCombs filed a Rule 56 Motion to Strike on October 10, 2012, in which he objects to portions of depositions provided by Dorothy Halfacre and John Little. [DE 29]. This Court did not rely on any portion of these depositions objected to by McCombs in making this summary judgment determination. Thus, the motion to strike is moot and has no consequence on the outcome of this case.

**Conclusion**

For the foregoing reasons, the Court **GRANTS** the Defendant's Motion for Summary Judgment [DE 22] and **GRANTS** the Plaintiff's Motion to Strike [DE 29]. The Court notes that McCombs has previously withdrawn his retaliation claims, and the Clerk is therefore **INSTRUCTED** to enter judgment for the Defendant.

SO ORDERED.

ENTERED:  August 12, 2013

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court